IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

RBP, L.L.C.,             )
                         )
        Plaintiff,       )
                         )
VS.                      )    No. 04-1154-T/An
                         )
GENUINE PARTS COMPANY and )
INDIANA INSURANCE COMPANY, )
                         )
        Defendants,      )
                         )
AND                      )
                         )
GENUINE PARTS COMPANY,   )
                         )
        Third-Party Plaintiff, )
                         )
VS.                      )
                         )
ALLIANZ GLOBAL RISKS U.S. )
INSURANCE COMPANY and    )
LEXINGTON INSURANCE      )
COMPANY,                 )
                         )
        Third-Party Defendants. )

ORDER DENYING MOTION OF THIRD-PARTY DEFENDANTS TO DISMISS
PLAINTIFF'S THIRD AMENDMENT TO AMENDED COMPLAINT

Third-Party Defendants ("Allianz" and "Lexington")[1] move to dismiss Plaintiff RBP,

---

[1] The Third-Party Defendants are Allianz Global Risks U.S. Insurance Company and Lexington Insurance Company. For convenience, the court will refer to these parties as "Allianz" and/or "Lexington."

This document entered on the docket sheet in compliance with Rule 58 and/or 79 (a) FRCP on 10/26/05

148

L.L.C.'s Third Amendment to its Amended Complaint. In the amendment, RBP, L.L.C. seeks to pursue a direct claim for recovery of insurance proceeds against Allianz and Lexington—the casualty insurers of RBP, L.L.C.'s commercial tenant. Even though RBP, L.L.C. was not a party to its tenant's insurance contract and was not named as loss payee or additional insured, RBP, L.L.C. argues that under Tennessee law[2] it has standing as a third-party beneficiary to directly enforce the policy of insurance. For the following reasons, Third-Party Defendants' Motion to Dismiss RBP, L.L.C.'s Third Amendment to its Amended Complaint is DENIED.

RBP, L.L.C. ("RBP") is a limited liability company organized under the laws of Tennessee and having its principal place of business in Jackson, Tennessee. In August of 2001, RBP entered into a written lease agreement with Genuine Parts Company ("GPC"),[3] whereby RBP agreed to lease certain commercial real estate in Jackson to GPC for GPC's business use. As part of the lease agreement, GPC covenanted to, *inter alia*, maintain casualty insurance protecting the premises from loss as a result of "fire, wind, storm, water, theft or other casualty." (Compl. ¶ 12) (quoting the lease). GPC further promised to provide RBP with evidence of the insurance coverage and to name RBP as the "loss payee." (Compl. ¶¶ 13, 14). The purpose of this lease provision, according to RBP, was to ensure

---

[2]This action was removed to federal court on the basis of diversity of citizenship. See 28 U.S.C. § 1441; id. § 1332. Whether Plaintiff has a first-party claim against its tenant's casualty insurer as a third-party beneficiary of the policy is a question of state law. The parties agree that the appropriate state law to apply to this issue is the law of Tennessee.

[3]GPC is a Georgia corporation that does business in Jackson, Tennessee.

that RBP would have access to an immediate source of funds and resources to repair and restore its commercial rental property in the event of a casualty loss.

GPC abided by its lease covenants with some exceptions. GPC did procure coverage under a policy of casualty insurance (the "GPC Policy") issued by Allianz and Lexington. In connection with obtaining the required coverage, GPC also provided Allianz and Lexington with a schedule of buildings in which it had an "insurable interest," including the Jackson property that was the subject of GPC's lease with RBP. (Compl. ¶ 46). The schedule allegedly put Allianz and Lexington on notice that the Jackson property was leased by GPC and that the lease imposed a contractual obligation on the insured, GPC, to maintain casualty insurance. According to RBP, it was obvious to Allianz and Lexington that the very purpose of the coverage was to protect RBP as the owner of the insured property. On the other hand, GPC never formally provided RBP with proof of insurance and never formally named RBP as "additional insured" or "loss payee," and Allianz and Lexington claim that GPC never informed them that GPC wanted its landlord to have a direct interest in the GPC policy.

The premises were substantially damaged by tornados that wreaked havoc in Jackson on May 4, 2003. RBP first filed a complaint against GPC and RBP's own insurer seeking to recover for the losses sustained in the tornado. GPC then filed a third-party complaint against Allianz and Lexington, relying on the GPC Policy. Subsequently, RBP amended its complaint to add a direct claim against Allianz and Lexington. See FED. R. CIV. P. 14(a).

Allianz and Lexington now ask the court to dismiss that claim.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint should be dismissed for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In ruling on a 12(b)(6) motion, however, a district court must assume the truth of all of the well-pleaded material facts alleged in the complaint. See Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 633 (1999). If the complaint gives a defendant " 'fair notice of what the plaintiff's claim is and the grounds upon which it rests,'" the motion should be denied. City of Monroe Employees Ret. Sys. v. Bridgestone Corp., 399 F.3d 651, 664 (6th Cir. 2005) (quoting Lawler v. Marshall, 898 F.2d 1196, 1199 (6th Cir. 1990) (in turn quoting Conley v. Gibson, 355 U.S. 41, 47 (1957))). Moreover, the factual inferences that a defendant draws from the complaint, along with the defendant's resulting legal conclusions, do not alone warrant a Rule 12(b)(6) dismissal. Id. at 665 (citing In Re Sofamor Danek Group, Inc., 123 F.3d 394, 400 (6th Cir. 1997) (in turn citing Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987))). In short, the motion to dismiss will be granted only if it appears that the plaintiff " 'undoubtedly can prove no set of facts in support of [its] claims that would entitle [it] to relief.'" Id. (citing PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 680 (6th Cir. 2004).

RBP may not bring a direct action against Allianz and Lexington arising out of the GPC Policy unless RBP has standing to sue on the policy. RBP was not a party to the policy and was not named as "loss payee" or "additional insured." Generally, under Tennessee law

4

one who was not a party to a contract has no standing to enforce the contract. See <u>Charter Oak Fire Ins. Co. v. Lexington Ins. Co.</u>, No. M2002-01752-COA-R3-CVNO, 2004 Tenn. App. LEXIS 150, at *10 (Tenn. Ct. App. March 2, 2004). Tennessee recognizes an exception to the general rule, however, when a non-party can establish standing as an intended third-party beneficiary of the contract sought to be enforced. <u>Owner-Operator Indep. Drivers Ass'n v. Concord EFS, Inc.</u>, 59 S.W.3d 63, 68 (Tenn. 2001), reh'g denied, No. M-1999-02560-SC-R11-CV, 2001 Tenn. LEXIS 777, at *1 (Tenn. 2001); <u>Charter Oak Fire Ins. Co.</u>, 2004 Tenn. App. LEXIS, at *10; <u>AmSouth Erectors, L.L.C. v. Skaggs Iron Works, Inc.</u>, No. W2002-01944-COA-R3-CV, 2003 Tenn. App. LEXIS 551, at *8–*12 (Tenn. Ct. App. Aug. 5, 2003); <u>J.S. Haren Co. v. City of Cleveland</u>, No. E2002-01327-COA-R3-CV, 2003 Tenn. App. LEXIS 406, at *13 (Tenn. Ct. App. May 30, 2003); <u>Nichols v. Transcor Am.</u>, No. M2001-01889-COA-R9-CV, 2002 Tenn. App. LEXIS 449, at *22–*23 (June 25, 2002); see also <u>Anderson v. Fru-Con Constr. Co.</u>, 125 Fed. Appx. 5, at *13 (6th Cir. Dec. 17, 2004). Because of the presumption in Tennessee that contracts are presumed to be "'executed for the benefit of the parties thereto,'" <u>Concord</u>, 59 S.W.3d at 68 (quoting <u>Oman Constr. Co. v. Tennessee Cent. Ry. Co.</u>, 370 S.W.2d 563, 572 (Tenn. 1963)), a non-party seeking to enforce a contract must demonstrate more than an expectation by the contracting parties that the non-party would incidentally benefit from performance. <u>Id.</u> (citing <u>Willard v. Claborn</u>, 419 S.W. 2d 168, 170 (Tenn. 1967)). Instead, the non-party must show that the principal parties entered into a valid contract with the "clear intent to

5

have the contract operate for the benefit of a third-party." Id. (citing First Tennessee Bank Nat'l Ass'n v. Thoroughbred Motor Cars, Inc., 932 S.W.2d 928, 930 (Tenn. Ct. App. 1996)). The issue in this motion is whether RBP has sufficiently pleaded the requirements of intended third-party beneficiary status under Tennessee law to withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The Supreme Court of Tennessee established the appropriate test to be applied to RBP's third-party beneficiary claim in Concord. At issue in Concord was whether the plaintiff credit card users had standing to enforce a merchant's promise to the merchant's bank (which in turn had made a promise to the credit card companies) that the merchant would not impose surcharges on card users. Id. at 65–66. The court held that a non-party has standing to enforce a contract if:

> (1) The parties to the contract have not otherwise agreed;
>
> (2) Recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the [contracting] parties; and[,]
>
> (3) The terms of the contract or the circumstances surrounding performance indicate that either:
>
>> (a) the performance of the promise will satisfy an obligation or discharge a duty owed by the promisee to the beneficiary; or[,]
>>
>> (b) the promisee intends to give the beneficiary the benefit of the promised performance.

Id. at 70 (adopting the position taken by the RESTATEMENT (SECOND) OF CONTRACTS § 302 (1979)). The court then applied the new test to the facts of the case and held that the

plaintiff cardholders did not have standing to enforce the merchant's promise. Id. at 73.

In applying the new test in Concord, the Supreme Court of Tennessee further elaborated on each of the test's three prongs. With respect to the first prong, which asks whether the contracting parties have agreed *not* to confer rights in third-parties, the court indicated that an explicit reservation of the benefits to the contracting parties themselves would conclusively preclude third-party standing. Id. at 71–72. Anything less than an explicit reservation, however, would be probative evidence in the promisor's favor but would not necessarily bar a third-party from enforcing the promise. Id. at 72.

As to the second prong, the court emphasized that a court should not rush to conclude that third-party enforcement is "appropriate" to "effectuate" the intent of the principal parties merely because the principal parties knew that a third-party would incidentally benefit from their agreement. On the contrary, if third-party standing would undermine the total contractual package entered into by the principal parties, then a court should find that the third-party was nothing more than an "incidental" beneficiary. Id. at 70–71. Applying this prong, the court found that allowing the card users to enforce the merchant's promise in a court would "undermine" the alternative dispute resolution procedures contained in the rules and regulations of the credit card companies (which were incorporated into the merchant's contracts with the banks and card companies). Id. at 72.

Finally, the court described the two scenarios in which the third prong could be satisfied. First, if performance by the promisor to the third-party will "satisfy an obligation"

7

or "discharge a duty" of the promisee to the third-party, the third-party will have standing as long as the first two prongs of the Concord test are also met. In this scenario, the fact that the promisee is motivated solely by self-interest (*i.e.*, the need to satisfy his pre-existing obligation as opposed to a desire to "benefit" the third-party) does not mandate a finding that the third-party was only an "incidental beneficiary." Id. at 71. The court also recognized that the promisor will often have little, if any, interest in the promisee's ancillary obligation but will be primarily concerned with receiving the promisee's consideration. Id. (citing 4 CORBIN ON CONTRACTS § 776 (1951). Under these circumstances, it is foreseeable that neither party will express a "direct desire" to benefit the third-party even though "benefitting" the third-party is arguably the "objective" of the principal contract. See id. (citing Hartman Ranch Co. v. Associated Oil Co., 73 P.2d 1163 (Cal. 1937). On the other hand, the court suggested that it would require heightened proof of the promisee's intent in cases where there is no pre-existing obligation or duty to the third-party. Id. at 71, 72 (finding that the no-surcharge provision was motivated by the promisee's desire to "maximize . . . profits" by "encourag[ing] card usage" but was not intended to "confer the primary benefit" upon the card users). Because the credit card companies had no duty to the credit card users to protect them from surcharges, and because the purpose of the no-surcharge provisions was simply to maximize company profits, the court concluded that the card users did not fall within either of the two scenarios contemplated by the third prong of the new test. Id. at 72–73. Based on that finding, along with the court's discussion of the

8

first and second prongs of the test, the court held that the card users did not have standing to judicially enforce the no-surcharge provision. Id. at 73.

In the present case, the court is unable to conclude that the allegations of the amended complaint fail, as a matter of law, to bring RBP's claim within all of the three requirements established in Concord. First, it is clear that neither the allegations of the complaint nor Allianz and Lexington's legal analysis support a finding that the parties to the insurance contract have "otherwise agreed" to reserve the right of performance to themselves. Allianz and Lexington forcefully point out that the parties to the insurance contract did not explicitly agree that the benefits of the policy would flow directly to RBP. (See Mem. Supp. Mot. to Dismiss at 5). This argument simply disregards the actual language of the relevant Tennessee case law, which focuses not on the absence of an agreement *creating* third-party rights—but on the absence of an agreement *foreclosing* third-party rights. See, e.g., Charter Oak Fire Ins. Co. v. Lexington Ins. Co., No. M2002-01752-COA-R3-CV, 2004 Tenn. App. LEXIS 150, at *13 (Tenn. Ct. App. March 2, 2004). Because there is not an explicit reservation in this case, RBP's third-party beneficiary claim does not fail as a result of the first Concord inquiry.

Second, it is equally clear to the court that RBP's amended complaint satisfies the third Concord inquiry. Allianz and Lexington do not dispute RBP's allegation that GPC had a contractual obligation to RBP to procure and maintain casualty protection on RBP's property and to name RBP as loss payee. Enforcement of Allianz and Lexington's promise

9

in favor of RBP as opposed to GPC will surely satisfy GPC's obligation to RBP. Under this prong of the test, moreover, Allianz and Lexington's lack of "intent" to specifically benefit RBP is not a bar to RBP's third-party beneficiary claim. See Concord, 59 S.W.3d at 71 ("In part (3), we focus on the promisee's intent, not the promisor's[;]" emphasizing that "[t]he motivating cause of the [promisor's] making the promise is usually his desire for the consideration given by the promisee") (second alteration in original) (quoting 4 CORBIN ON CONTRACTS § 776 (1951)). Therefore, RBP has stated a valid claim under the third prong of Concord. See Charter Oak Fire Ins. Co., 2004 Tenn. App. LEXIS, at *18 (focusing on the insured's lease obligations without discussing the insurance policy).

The most difficult of the three Concord prongs to apply to the alleged facts of this case is the second prong. That prong asks whether allowing a third-party to directly enforce the promisor's promise is "appropriate to effectuate the intention of the [contracting parties]." Concord, 59 S.W.3d at 70. If the objectives of the contracting parties would be "undermine[d]" by allowing RBP's claim to proceed, the court should find the claim "inappropriate." The nature of this inquiry differs from the third prong in that Allianz and Lexington's specific objectives in issuing the policy must be given the same weight accorded to the objectives of their insured. Allianz and Lexington contend that, if their objectives as issuers of the GPC policy are to be respected under the second Concord prong, the court may not allow RBP to directly enforce the policy unless RBP shows that "*both parties*, the insurers *and* [GPC], intended for the benefits of the polic[y] to flow to [RBP]

10

specifically[.]" (Mem. Supp. Mot. to Dismiss at 7). According to Allianz and Lexington, the fact that RBP was not named as "loss payee" and was not provided a "Certificate of Insurance" naming RBP as an "additional insured" automatically demonstrates that their objectives as insurers would be "undermined" by recognizing RBP's claim. Id.[4] RBP counters that Allianz and Lexington's knowledge of GPC's lease obligation and the type of coverage that Allianz and Lexington provided (repair and replacement cost of the building) made it "axiomatic" the "clear objective[s]" of both parties at the time of contracting coincided with RBP's interest as the ultimate beneficiary. (See RBP's Resp. to Mot. to Dismiss at 5–6). After careful consideration of the parties' respective positions, and in light of the liberal standards that govern motions to dismiss, the court finds that RBP has at least stated a facially legitimate claim that recognizing RBP's claim would not necessarily "undermine" the objectives of Allianz and Lexington.

Allianz and Lexington's primary objective in issuing the GPC policy was obviously to obtain GPC's premium. Although it does not appear that Allianz and Lexington announced a "specific intent" that the proceeds would be directly payable to RBP, it is equally uncertain that direct payment would "undermine" the objective (receipt of premium) of Allianz and Lexington at the time that they issued the GPC policy. Perhaps acknowledging that their objective in receiving GPC's premium would not be undermined, Allianz and Lexington argue instead that their formal "mechanisms" for creating third-party

---

[4]At least one state court appears to have endorsed a similar position. See Postlewait Constr. Inc. v. Great Am. Ins. Cos., 720 P.2d 805, 806 (Wash. 1986).

11

rights would be bypassed if RBP is allowed to proceed in its own right. (Mem. Supp. Mot. at 5–6). The "mechanisms" that Allianz and Lexington refer to are their procedures for naming loss payees and the opportunity for an insured to obtain a "Certificate of Insurance" that names a third-party as "additional insured." Id. In support of this argument, Allianz and Lexington rely on Zaharias v. Vassis, 789 S.W.2d 906 (Tenn. Ct. App. 1989),[5] remanded on other grounds, No. 01-A-01-9207-CH-00266, 1993 Tenn. App. LEXIS 65, at *1–*9 (Tenn. Ct. App. Jan. 22, 1993).

Zaharias, a pre-Concord case, is distinguishable. In Zaharias, the plaintiff agreed to sell his interest in a restaurant along with the building in which the restaurant was located. Zaharias, 789 S.W.2d at 907. To assist the buyer in financing the purchase, the plaintiff

---

[5] Allianz and Lexington also cite to several cases that either do not reflect Tennessee law or do not address the specific issue presented in this case, or both. (See Mem. Supp. Mot. to Dismiss at 5–7) (citing Sears, Roebuck, & Co. v. Royal Surplus Lines Ins. Co., No. 01-4279, 2003 U.S. App. LEXIS 4752, at **12 (7th Cir. Mar. 14, 2003) (indemnification); Alliance Syndicate, Inc. v. Parsec, Inc., 741 N.E.2d 1039, 1045 (Ill. Ct. App. 2000) (duty to defend); Alex Robertson Co. v. Imperial Cas. & Indem. Co., 10 Cal. Rptr.2d 165, 170 (Cal. Ct. App. 1992) (indemnification ); Jefferson v. Sinclair Refining Co., 179 N.E.2d 706, 707–08 (N.Y. 1961) (indemnification); Cowley v. Texas Snubbing Control, 812 F. Supp. 1437, 1445–46 (D. Miss.) (applying Texas and Mississippi law; noting that "[u]nder the laws of both states, persons injured by an insured are not third-party beneficiaries of the insurance contract before a judgment is obtained against the insured, in the absence of a statute or contractual provision establishing that third party's status as an intended third-party beneficiary. Injured third parties can be intended third-party beneficiaries of insurance contracts only where contractual or statutory provisions grant those third parties rights in the insurance agreement.")). Here, RBP's third-party beneficiary claim is not based on Allianz and Lexington's duty to indemnify GPC for losses caused by GPC's failure to comply with its lease—clearly, Allianz and Lexington had no such duty. Thus, the cases that would require RBP to first establish GPC's legal liability before pursuing the latter's indemnitor are patently irrelevant to RBP's third-party claim—which is not dependent on GPC's fault.

12

agreed to accept a second deed of trust conveying both the building and the personal property contained inside the building as security for part of the purchase price. Id. One of the buyer's additional obligations was to secure and maintain insurance on the collateral. Id. The buyer substantially complied with this obligation but did not make it clear to the insurer that the plaintiff-seller claimed an insurable secured interest in the personal property as well as the real estate. Instead, the buyer merely instructed the insurer to list the plaintiff-seller as "mortgagee." Id.

After the building and the personal property burned, the insurer agreed to pay the plaintiff-seller only for the loss to the building under the "mortgagee" clause. Id. The insurer contended that the "mortgagee" clause was understood to apply only to real property. Id. The state court of appeals agreed. Id. at 908. Notably, the court focused on proof that the insurance industry attached one meaning and one meaning only to the term "mortgagee"—a person or entity with a secured interest in real property. Id. The court held that by using a technical term such as "mortgagee" without any additional qualifications, the buyer had prevented the insurer from "contemplating" the buyer's true intent to obtain coverage protecting all of the plaintiff-seller's collateral. Id. at 909. To hold otherwise would have increased the quantity of property insured under the "mortgagee" clause (*i.e.*, the company's financial exposure) beyond that which the insurer had justifiably believed when it issued the policy. Because there was no "mutual intent" at the time that the "mortgagee" clause meant more than what it was commonly understood to mean, then, the

13

court held that the plaintiff-seller could not be considered a third-party beneficiary to the extent that the plaintiff-seller sought to recover for losses to personal property. Id.

Allianz and Lexington cite to the Zaharias court's holding that, "under Tennessee law, it is necessary, in order to be considered a third[-]party beneficiary, for the party seeking such status to show that he was contemplated as such by the contracting parties.'" (Mem. Supp. Mot. to Dismiss at 6) (quoting Zaharias, 789 S.W.2d at 909). Under the argument advanced by Allianz and Lexington, a third-party in RBP's position can never show that the insurer "contemplated" the third-party as an intended beneficiary unless the insurer and the insured explicitly name the third-party in the policy or in a certificate of insurance. (Mem. Supp. Mot. to Dismiss at 7). This conclusion does not follow from the reasoning in Zaharias. The insurer in that case specifically and justifiably "contemplated" only real property as insured property as the result of the buyer's choice of a legal term of art without further elaboration; for that reason, whatever non-derivative contractual rights the plaintiff-seller *did* have in *Zaharias* were defined and were limited by the term "mortgagee" as that term was customarily understood. See Zaharias, 789 S.W.2d at 908. No such circumstance is present here. Unlike the policy in Zaharias, the language in the GPC policy addresses neither the existence nor the extent of third-party rights, and (unlike Zaharias) permitting RBP's claim to proceed will in no way alter or extend any specific language in the GPC policy. The fact that the policy does not address RBP's rights simply does not, *ipso facto*, warrant a finding that those rights were not mutually "contemplated" by GPC and Allianz

14

and Lexington, and the fact that GPC did not formally name RBP as "loss payee" or obtain a certificate evidencing RBP's status does not necessarily "undermine" any compelling interest of Allianz and Lexington in this specific case. See, e.g., Moore Constr. Co. v. Clarksville Dep't of Elec., 707 S.W.2d 1, 9–10 (Tenn. Ct. App. 1985) ("Each [third-party beneficiary] case must be decided on its own unique facts considered in light of the specific contractual agreements and the circumstances under which they were made."). For these reasons, Zaharias does not bar RBP's claim.[6]

In summary, Allianz and Lexington have failed to persuade the court that, as a matter of Tennessee law, RBP has not pleaded sufficient facts to bring it within the definition of intended third-party beneficiaries articulated in Concord. The GPC policy does not contain an explicit provision reserving the "benefits" of the policy to GPC and Allianz and Lexington exclusively. Also, RBP alleges that GPC has a contractual "obligation" to RBP that will be discharged by RBP's enforcement of Allianz and Lexington's promise. Finally,

---

[6] See also Charter Oak Fire Ins. Co. v. Lexington Ins. Co., No. M2002-01752-COA-R3-CV, 2004 Tenn. App. LEXIS 149, at *17 (Tenn. Ct. App. Mar. 2, 2004) (suggesting that the determination whether third-party enforcement would "undermine" the contracting parties' objectives cannot be answered solely by reference to the language of the agreement; instead, different facts may lead to different findings with respect to the parties' "objectives" notwithstanding the use of identical contractual language and the observance of identical formalities in each case). On the other hand, in some cases, the provisions of the parties' agreement may themselves disclose that third-party enforcement would "undermine" the parties' objectives. See Owner-Operator Indep. Drivers Ass'n v. Concord EFS, Inc., 59 S.W.3d 63, 72 (Tenn. 2001) (allowing third-party to judicially enforce no-surcharge agreement would undermine the alternative arbitration procedure that the contracting parties had explicitly established for resolving third-party claims), reh'g denied, No. M-1999-02560-SC-R11-CV, 2001 Tenn. LEXIS 777, at *1 (Tenn. 2001). This is not such a case; nothing in the policy itself leads to the conclusion that the objectives of either GPC or Allianz and Lexington would be "undermined" by allowing RBP to sue on the GPC policy.

at this stage of the litigation neither the alleged facts in the complaint nor the legal arguments made in Allianz and Lexington's legal memoranda justify the inference that third-party enforcement would "undermine" the objectives of the GPC policy. Therefore, the court concludes that RBP has stated a facially legitimate claim that it was a third-party beneficiary of the GPC policy under Tennessee law.

For these reasons, Third-Party Defendants' Motion to Dismiss RBP, L.L.C.'s Third Amendment to its Amended Complaint is DENIED.

IT IS SO ORDERED.

*/s/ James D. Todd*
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

25 October 2005
DATE

# UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 148 in case 1:04-CV-01154 was distributed by fax, mail, or direct printing on October 26, 2005 to the parties listed.

---

Henry R. Daar
DAAR & VENEK, P.C.
225 West Washington St., 18th Floor
Chicago, IL 60606

Brian T. Moore
DREW ECKL & FARNHAM
880 W. Peachtree St.
P.O. Box 7600
Atlanta, GA 30357

Douglas F. Halijan
BURCH PORTER & JOHNSON
130 N. Court Avenue
Memphis, TN 38103

Thomas A. Vickers
Daar & Vanek, P.C.
225 W. Washington
18th Floor
Chicago, IL 60606

Russell E. Reviere
RAINEY KIZER REVIERE & BELL
209 E. Main Street
Jackson, TN 38302--114

Albert B. Merkel
MERKEL & TABOR
203 S. Shannon
Jackson, TN 38302--287

Robert L. Green
NEELY GREEN FARGARSON BROOKE & SUMMERS
65 Union Ave.
Ste. 900
Memphis, TN 38103--054

Gilbert Michael Malm
Budd Larner
127 Peachtree Street, NE
Ste 636
Atlanta, GA 30303

Robert W. Fisher
ROBINS KAPLAN MILLER & CIRESI-Atlanta
2600 One Atlanta Plaza
950 East Paces Ferry Rd., NE
Atlanta, GA 30326--138

Thomas A. Vickers
225 W. Washington
18th Floor
Chicago, IL 60606

Heidi H. Raschke
ROBINS KAPLAN MILLER & CIRESI-Atlanta
2600 One Atlanta Plaza
950 East Paces Rerry Rd., NE
Atlanta, GA 30326--138

Loys A. Jordan
MCDONALD KUHN
119 South Main St.
Ste. 400
Memphis, TN 38103

Clayton H. Farnham
DREW ECKL & FARNHAM
P.O. Box 7600
Atlanta, GA 30357

Honorable James Todd
US DISTRICT COURT